**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

JEFFERY COWGILL,                                                                                    PLAINTIFF
ADC #145476

v.                                             5:12CV00112-JMM-JTK

RAY HOBBS, et al.                                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James

M. Moody.   Any party may serve and file written objections to this recommendation.   Objections

should be specific and should include the factual or legal basis for the objection.   If the objection

is to a factual finding, specifically identify that finding and the evidence that supports your

objection.   An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.   Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a

hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.      Introduction

This matter is before the Court on the Defendants' Motions for Summary Judgment, together with Briefs in Support and Statements of Indisputable Material Facts (Doc. Nos. 61-66).  Plaintiff filed a Response, Statement of Facts, and Addendum in opposition to the Motion (Doc. Nos. 74-76).

Plaintiff Jeffery Cowgill is a state inmate incarcerated at the Tucker Unit of the Arkansas Department of Correction (ADC).  He filed this civil rights action pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, §§ 16-123-101 - 108, alleging failure to protect and deliberate indifference to his serious medical needs by Defendants, while he was incarcerated at the Cummins Unit in 2011.[1]  Plaintiff asks for monetary and injunctive relief from Defendants Green, Holtoff, Moncrief, Tate, Thurman, and Warner, who are employees of the ADC, and Defendants Austin, Warren, and Corizon, Inc. (medical Defendants).  The remaining Defendants, together with

---

[1]Plaintiff has been represented by counsel during the pendency of these proceedings.

2

Plaintiff's retaliation claims, were dismissed on September 24, 2012 (Doc. No. 46).

## II.     Plaintiff's Complaint (Doc. No. 2)

Plaintiff alleges that he is a veteran of the United States Army, and suffers from a combination of "polytraumas," which include post-traumatic stress disorder (PTSD), traumatic brain injury, shrapnel embedded in various areas of his body, Reiter's syndrome (arthritis), knee and back injuries, tinnitus, hearing deficits, and other psychological problems exacerbated by stress (Doc. No. 2, pp. 7-8).   He alleges Defendants were placed on notice of these conditions (through his VA medical records) when he was incarcerated in the ADC in August 2009, after convictions of residential burglary and second degree sexual assault.  (Id., pp. 6-8.)  In Count I of his Complaint, Plaintiff alleges that on January 6, 2011, another inmate (Painter) was placed in the punitive isolation cell with Plaintiff, which was designed to be a one-person cell (Id., p. 11).   Plaintiff complained about sharing his cell with inmate Painter, who was known to be extremely violent and easily agitated, especially since two other empty cells on either side of Plaintiff were available.  (Id.)  Defendants MonCrief and Holthoff also were aware that Plaintiff should be incarcerated alone due to his PTSD.  (Id., p. 12.)

Plaintiff tried to speak with Defendant Warner about this inmate, but Warner did not stop or acknowledge Plaintiff, later falsely stating he failed to hear Plaintiff.  (Id.)  On January 10, 2011, Painter fashioned a weapon out of a broomstick and threatened Plaintiff, necessitating extraction by several officers (Id.).  Defendants Green, Tate, and others twice improperly fired a 37 mm non-lethal sabot round into the cell, approximately 36 inches from Plaintiff's head.  (Id., p. 13.)  Plaintiff hid behind a mattress during this time, but his head and feet were covered with gunshot residue.  (Id.)  The loud noise from the weapon caused Plaintiff to suffer an injury to a tooth, and exacerbated his

PTSD.  (Id.)  Plaintiff alleges that Defendants' actions were indifferent to his safety and medical conditions, resulting in physical and mental injuries.  (Id., p. 14.)

In Count II, Plaintiff alleges deliberate indifference to his health needs, stating his requested sick calls often were ignored and medical defendants failed to provide adequate care for his medical needs.  (Id., p. 15.)  He also claims he was improperly assigned to work in the fields despite medical restrictions.  (Id.)  He was prescribed an antibiotic on April 25, 2011 for an infection, but when he did not receive it, filed a grievance on April 29, 2011.  (Id., p. 16.)  Defendant Austin started his treatment on May 2, 2011, causing Plaintiff needless suffering due to the delay.  Plaintiff also alleges a lack of supervision and/or training by CMS and Defendant Griffin.  (Id.)

In Count III, Plaintiff alleges that he was treated by the VA hospital prior to his incarceration for various service-related problems, including shrapnel-type injuries in his arm.  (Id., p. 17.)  On May 18, 2011, he filed a grievance asking that something be done about the shrapnel in his arm, and x-rays confirmed the existence of the shrapnel.  (Id.)  Despite referrals to the doctor, he was not examined by Defendant Warren until May 23, 2011, at which time he failed and refused to address Plaintiff's problem.  (Id., p. 18.)  Plaintiff alleges that Defendants CMS and Griffin failed to adequately train or supervise their health employees, and that none of the Defendants have attempted to deal with Plaintiff's mental and emotional disabilities.  (Id., pp. 18-19.)

## III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    ADC Defendants' Motion

#### 1)    Exhaustion

##### a.    Defendants' Motion

Defendants first ask the Court to dismiss Plaintiff's failure to protect allegations against Defendants Holtoff, Green, Moncrief, and Thurman, based on his failure to exhaust his administrative remedies against them. The ADC grievance procedure in place at the time, Administrative Directive (AD) 10-32, requires complete exhaustion of the grievance procedures prior to the filing of a lawsuit, and specifically requires inmates to name every prison employee involved in the incidents about which they grieve. (Doc. No. 61-14, pp. 5, 18.) In addition, the grievance forms state that only one complaint should be included per grievance, and that inmates should be specific as to the complaint, date, place, name of personnel involved and how the inmate was affected. (Doc. No. 61-14, p. 19.) According to Barbara Williams, an Inmate Grievance Supervisor at the ADC, from January 10, 2011 (the date of the cell extraction incident) through

March 28, 2012 (the filing of Plaintiff's Complaint), Plaintiff exhausted his administrative remedies concerning the January 10, 2011 incident with respect to Defendants Tate and Warner (Doc. No. 61-13, p. 3.) Plaintiff filed three grievances concerning this incident: 1) CU-11-117, in which he named Defendant Tate, 2) CU-11-118, a duplicate grievance naming Defendant Tate, and 3) CU-11-116, a grievance naming Defendant Warner. (Id., pp. 3-4; Doc. Nos. 61-2 – 61-8.) Defendants state that Plaintiff's failure to name the other individual Defendants requires their dismissal for failure to exhaust, citing Jones v. Bock, 549 U.S. 199, 219 (2007), and Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). In addition, Defendants note Plaintiff acknowledged in his deposition that only his claims against Defendants Tate and Warner were exhausted through the grievance process (Doc. No. 61-1, pp. 17-18.)

### b.      Plaintiff's Response

In Response, Plaintiff refers to the ADC grievance procedures as "Byzantine,", stating that the ADC hides behind the procedures and does not address whether Plaintiff has memory, concentration, or patience in order to participate effectively in the process (Doc. No. 74, pp. 6-7.)

### c.      Analysis

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, 532 U.S. 731, 741 (2001), the United States Supreme Court held that in enacting the PLRA, "Congress has

6

mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."  In addition, the United States Court of Appeals for the Eighth Circuit held, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'"  Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000).  In Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003), the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."  (Emphasis in original.)   Finally, in Jones v. Bock, 549 U.S. at 218,  the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

The United States Court of Appeals for the Eighth Circuit recently ruled that if prison officials decide a procedurally-flawed grievance on the merits, they effectively waive the argument that an inmate failed to exhaust because he did not comply with the grievance procedures.  In Hammett v. Cofield, 681 F.3d 945 (8th Cir. 2012), an inmate relied on grievances which were not exhausted or which were filed outside of mandatory time limits.  The Court decided, however, that the "PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits."  681 F.3d at 947.  This line of reasoning was extended to an exhausted grievance filed by an inmate who failed to comply with the prison procedures requiring that defendants be specifically named, in Bower v. Kelley, 494 Fed.Appx. 718, 2012 WL 6199266 (8th

Cir. 2012). In that case, the inmate failed to name any individuals in his grievance complaining about inadequate medical care, yet the grievance effectively was processed through the grievance procedure. The Court held that Plaintiff's failure to specifically name the Defendants in the grievance did not preclude exhaustion, citing the <u>Hammett</u> decision. 2012 WL 6199266 at *1.

In this case, Plaintiff exhausted three grievances concerning the January 10, 2011 incident. In CU-11-117, Plaintiff complained about Defendant Tate firing the non-lethal rounds into his cell during the extraction process. (Doc. No. 61-2, p. 1.) No other person is referred to by Plaintiff, or by the prison officials in their responses. (Doc. Nos. 61-3, 61-4.) In CU-11-118, Plaintiff refers to Defendant Tate and officers Arnold and Weeks (non-parties), complaining about the same incident. (Doc. No. 61-5.) Again, no other Defendant is referred to by Plaintiff or the prison officials in their responses. (Doc. Nos. 61-5, 61-6, 61-7.) In CU11-116, Plaintiff complains that Defendant Warner ignored his efforts to speak with him about being housed with inmate Painter, and also states that when he complained to "the guard" about Painter, "the guard" threatened to write him up for a disciplinary. (Doc. No. 61-8.) Again, no other Defendants are mentioned in the grievance or responses. (Doc. Nos. 61-9, 61-10.) However, in his deposition, Plaintiff states that "the guard" referred to in his grievance is Defendant Moncrief (Doc. No. 61-1, p. 17.)

Having reviewed these grievances, the Court finds that Plaintiff exhausted his administrative remedies with respect to his failure to protect claims against Defendants Tate, Warner, and Moncrief, and that the failure to protect allegations against Defendants Holtoff and Thurman should be dismissed without prejudice for failure to exhaust.[2]

---

[2]Plaintiff's allegations against Defendant Green are that he acted with deliberate indifference to Plaintiff's medical condition and used excessive force in handcuffing Plaintiff (Doc. No. 2, p. 4). Plaintiff did file and exhaust a grievance (CU-11-0719) with respect to the

2)      **Failure to Protect**

a.    **Defendants' Motion**

Defendants next state that Plaintiff cannot support his failure to protect claim against them, because he cannot show that they were deliberately indifferent to a risk of serious harm, as set forth in <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Specifically, although Plaintiff alleges in his complaint that his PTSD was exacerbated by the cell extraction and his hearing deficit impacted, he admitted in his deposition that he did not suffer any injuries other than singed eyebrows and a loose tooth (Doc. No. 61-1, p. 30.) In addition, he stated that Defendant Tate was not thinking at the time, and behaved negligently. (<u>Id</u>., pp. 33-34.)

Defendant Tate describes the January 10, 2011 incident in his affidavit as follows: in 2011, the Cummins Unit did not house inmates who required single man status, and the inmates in punitive isolation were placed in double man cells with other inmates who were not on their enemy alert lists. (Doc. No. 61-11, pp. 1-2.) Although Tate did not assign Painter to Plaintiff's cell, he would not have had any reason to think that they should not be housed together, and they were not on each other's enemy alert lists. (<u>Id</u>., p. 2.) Painter became combative in his cell on January 10, 2011, dashed an officer with urine, and threatened officers with the broken handle of a broom. (<u>Id</u>., pp. 2, 5.) He did not, however, strike, hit, or appear to threaten Plaintiff Cowgill. (Id., p. 5.) When Painter failed to comply with several orders to give up the broom and submit to handcuffs, he wrapped his mattress around his body and covered his face with plastic to protect himself from the use of pepper spray by the officers. (<u>Id</u>., p. 3.) During this time, Tate could see Plaintiff lying on his bunk with his mattress across his body, and did not see Painter physically assault or injure the

cuffing incident. (<u>Id</u>., pp. 26-29.)

Plaintiff.  (Id.)  Finding the use of force necessary to maintain or regain control of inmate Painter,

Tate assembled an extraction team in accordance with the ADC use of Force Policy, AD 09-17.  (Id.,

p. 4, Doc. No. 61-12.)  Tate first fired a 37 mm non-lethal munition which struck Painter's mattress,

and when he continued to refuse to submit to the cuffs, fired a second round which struck Painter

in the chest, causing him to drop the weapon and submit to handcuffs.  (Id.) As the team tried to enter

the cell, they also discovered that Painter had braided torn sheets together and tied them from the

door to the bed, preventing entry into the cell.  (Id.)  Plaintiff then assisted the officers by untying

the sheets from the door, and the officers also cut the sheets to enter the cell.  (Id., p. 5.) The team

then removed Plaintiff and Painter from the cell.  (Id.)  Tate states that Plaintiff did not complain

about Painter to him prior to this incident, did not ask him to see medical or mental health providers,

and did not suggest to him that he was injured in the January 10, 2011 incident.  (Id.)  In addition,

Tate states that prior to the incident he was not aware that Plaintiff suffered from any mental health

issues or traumatic brain injury.  (Id.)  Based on these facts, Defendant Tate states that Plaintiff

cannot show that his actions were deliberately indifferent to Plaintiff's health and safety.

Plaintiff's allegation against Defendant Moncrief relates to a single complaint made to him

on the day that Painter moved in, but Plaintiff admits that he never said anything else to Moncrief.

(Doc. No. 61-1, p.8).   At that time, Plaintiff admits he did not know inmate Painter, had never

spoken with him, and did not add him to his enemy alert list.  (Id., p.7.)  Based on these facts,

Defendant Moncrief states that Plaintiff cannot show that he was deliberately indifferent to his

health and safety.

Plaintiff sued Defendant Warner based on his failure to respond to Plaintiff's efforts to speak

with him about inmate Painter.  (Doc. No. 61-1, p. 10.)  Plaintiff admits in his deposition that he

never spoke with Warner and surmises that he ignored him.  (Id.)  In his affidavit, Warner states he

was not involved in the decision to house Painter with Plaintiff, and would have had no reason to

think that such would be a dangerous assignment, because both were white males in the same age

range, serving time for similar crimes.  (Doc. No. 61-17, p. 2.)  In addition, Warner denies that

Plaintiff talked with him about a problem with Painter or that he heard Plaintiff call his name and

ignored him.  (Id., p. 3.)  Finally, he states he was not aware of Plaintiff's hearing condition, PTSD,

or traumatic brain injuries.  (Id.)

As noted earlier, Plaintiff alleges that Defendant Green hurt his hand in August 2011, by

double-cuffing him despite the ADC medical policy prohibiting such.  (Doc. No. 61-1.)  Plaintiff

states in his deposition that Green applied the handcuffs too tight, and that when he sought medical

care, he was told that nothing was wrong.  (Id., p. 38.)  Green states that these bare assertions fail

to support a finding of a constitutional violation, and should be dismissed for failure to state a claim

upon which relief may be granted.

Finally, Defendants state that Plaintiff failed to respond to their requests for admissions, and

therefore, pursuant to FED.R.CIV.P. 36(3), they are deemed admitted.  These admissions include:

prior to the January 10, 2011 incident, Plaintiff never asked any of the ADC Defendants to move

him out of the cell with inmate Painter, or to remove Painter from the cell; Plaintiff did not sustain

any cuts, scrapes or bruises during the cell extraction, and did not sustain any injuries requiring

medical care; plaintiff never placed a sick call after the incident requesting medical attention for

injuries sustained during the extraction; plaintiff never placed a sick call request to see a mental

health person after the extraction for problems associated with the incident; and, plaintiff did not

have a conversation with Defendant Warner about inmate Painter prior to the incident.  (Doc. No.

61-18.)

Defendants also state they are protected from liability by qualified immunity, because they did not violate any clearly-established constitutional right, and because Plaintiff's allegations against them amount to no more than negligence in the performance of their jobs.   An allegation of negligence is not enough to establish liability under § 1983, and Plaintiff provides no proof that Defendants knew of and disregarded an excessive risk to his health and safety.

### b.        Plaintiff's Response

In his Response, Plaintiff states that by placing Painter in his cell, Defendants asked for trouble, because they knew that Painter was being punished for attacking a guard, and they knew of Plaintiff's medical and mental health history (Doc. No. 74, p. 7.)  Shooting off the grenade launcher with rubber bullets raised memories of combat for Plaintiff, and firing weapons less than a yard from Plaintiff's head was deliberate indifference.

### c.        Analysis

Qualified immunity protects officials who acted in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

12

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[3]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

While inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates, this right is not violated unless a prison official is "deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates."  Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000), quoting Newman v. Holmes, 122 F.3d 650, 652 (8th Cir. 1997).  In determining if an official claiming qualified immunity acted with deliberate indifference, the court must determine whether it was "'objectively legally reasonable'" for the official to believe that his conduct did not violate the inmate's clearly established Eighth Amendment right."  Curry, 226 F.3d at 977, quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987).

There appear to be two aspects to Plaintiff's failure to protect claim: first, he alleges a failure to protect with respect to the placement of inmate Painter into his cell, and second, a failure to protect with respect to the decision to extract Painter by using the non-lethal munitions.  With

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. at 236).

respect to the first part, the Court finds as a matter of law, absent a dispute of material fact, that the decision to place Painter in Plaintiff's cell was not objectively unreasonable.  Plaintiff admitted in his deposition that he did not know Painter at the time, had never spoken with him, and that neither of them were on the others' enemy alert list.  (Doc. No. 61-1, p. 7.)  In addition, none of the named Defendants are alleged to have made the initial decision to place Painter in the cell.  The Court finds no finding of deliberate indifference with respect to the single encounter between Plaintiff and Defendant Moncrief, in which Plaintiff states he asked Moncrief to remove Painter because he did not want a cell mate.  This allegation, without more, is insufficient to support a finding of deliberate indifference, especially since Painter was not on Plaintiff's enemy alert list, and vice versa.  Similarly, Plaintiff's claim against Defendant Warner, that he ignored his request to talk to him about removing Painter on a single occasion, does not support a finding of deliberate indifference.  "We have held in a number of cases that prison officials are entitled to qualified immunity from § 1983 damage actions premised on an Eighth Amendment failure-to-protect theory when an inmate was injured in a surprise attack by another inmate."  Curry, 226 F.3d at 978-979.  In this case, it is undisputed that Painter did not injure Plaintiff, and it is undisputed that Painter had not acted in a way prior to the incident to indicate that Plaintiff was in danger of harm.  Furthermore, despite Plaintiff's vague assertion that Defendants knew of Painter's violent tendencies, Plaintiff provides no evidence of such knowledge by Defendants Warner and Moncrief.  Therefore, the Court finds these Defendants are entitled to qualified immunity.

In addition, with respect to Plaintiff's second failure to protect claim – that Defendant Tate's actions during the cell extraction were deliberately indifferent to his health and safety – the Court

finds that his actions were not objectively unreasonable.  First, Plaintiff admits that his physical injuries were minimal.  In addition, although he claims that Defendants should have known of his PTSD and other conditions, he provides no evidence that Defendant Tate knew of such.  However, even if he did, the Court finds that Tate's actions do not rise to the level of deliberate indifference. Plaintiff does not dispute that Painter was acting out and threatening officers, and he does not deny that he feared for his own safety. (Doc. No. 61-1, pp. 21-22.)  Plaintiff also does not dispute Tate's statement that the guards were aware of Plaintiff's position during the extraction and acted in an effort to minimize harm to Plaintiff and others.  (Id., p. 22.)  Plaintiff does not show how Defendant's actions were unreasonable in light of the ADC use of force policy, and it is clear that the violation of a policy would not support a finding of a constitutional violation.  See Williams v. Nix, 1 F3d 712, 717 (8th Cir. 1993).   Plaintiff also admits, through the failure to file responses to Defendants' requests for admissions, that during his incarceration at the ADC he has been provided medical and mental health care services when requested, and that at times, Plaintiff failed to comply with the mental health treatment set forth by the ADC.  (Doc. No. 61-18, pp 1-2.)  In light of all of the undisputed facts, the Court finds that Defendant Tate also is entitled to qualified immunity.

With respect to the single allegation against Defendant Green concerning the placement of handcuffs, the Court finds that Plaintiff fails to produce any facts surrounding the incident or other evidence to support a finding of deliberate indifference by Defendant Green.

### 3)   Arkansas Civil Rights Act

Defendants ask the Court to dismiss Plaintiff's state civil rights claims against them.  ACA 16-12-105 provides as follows:

(a) Every person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects, or causes to be

subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured in an action in circuit court for legal and equitable relief or other proper redress.

............

(c) When construing this section, a court may look for guidance to state and federal decisions interpreting the federal Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983, as in effect on January 1, 1993, which decisions and act shall have persuasive authority only.

However, "when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, the state claims are ordinarily dismissed without prejudice to avoid needless decisions of state law ... as a matter of comity." ACLU v. City of Florissant, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (internal quotations omitted). "We stress the need to exercise judicial restraint and avoid state law issues wherever possible." Condor Corp. v. City of St. Paul, 912 F.2d 215, 220 (8th Cir. 1990). Therefore, in light of this law, the Court exercises its discretion to dismiss Plaintiff's state law claims against Defendants, without prejudice.

**B.     Medical Defendants' Motion**

**1)     Exhaustion**

**a.     Defendants' Motion**

Defendants state Plaintiff failed to exhaust his claims against Defendants Corizon, Inc., and Austin, because he did not file any grievances naming them, and that he did not grieve and exhaust a mental health claim against Dr. Warren. According to the Declaration of Rory Griffin, a Medical Administrator at the ADC Central Office, from September, 2010 until June 16, 2012, Plaintiff filed and exhausted the grievance process for eight medical and/or mental health grievances. (Doc. No. 66-1, pp.1-2, 21-30.) The only grievance dealing with the issues set forth in Plaintiff's Complaint is CU-11-01069, where Plaintiff complained that Defendant Warren failed and refused to provide

sufficient medical care for the shrapnel in his arm, and refused to renew a one-arm script. (Doc. No. 66-1, p. 28.)  Therefore, since Plaintiff did not specifically identify Defendants Austin or Corizon or his current claims against them in these exhausted grievances, Defendants state Plaintiff's claims against them should be dismissed.  Likewise, the mental health claims against Defendant Warren also should be dismissed.  Defendants note that Plaintiff failed to respond to their request for admissions, effectively admitting that he did not exhaust his claim against Defendant Austin or his mental health claim against Defendant Warren.  (Doc. No. 66-5, p. 3.)

### b.    Plaintiff's Response

Plaintiff's Response is the same as his Response to the ADC Defendants' Motion, that the grievance procedure is "Byzantine."  (Doc. No. 74, p. 6.)

### c.    Analysis

As noted earlier, both the PLRA and the ADC grievance procedure require that an inmate completely exhaust his administrative remedies prior to filing a lawsuit against an official.  42 U.S.C. § 1997e, AD 10-32 (Doc. No. 66-1).  Plaintiff provides no argument to dispute Defendants' contention that he did not file and exhaust a grievance based on his claims against Corizon, Inc., and Austin, or the mental health claims against Defendant Warren.  In addition, he does not dispute that he did not respond to Defendants' requests for admissions, thereby admitting a failure to exhaust. Therefore, the Court finds that Defendants Austin and Corizon should be dismissed without prejudice from Plaintiff's Complaint, and that the mental health claim against Defendant Warren should be dismissed, without prejudice.

### 2)    Deliberate Indifference

### a.    Defendants' Motion

Defendant Warren states Plaintiff cannot support the deliberate indifference claim against him, and that Plaintiff's complaints against him amount to a disagreement over the type of medical treatment he received, which is not a constitutional violation.  Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987).  In a Declaration in support of his Motion, Defendant Warren states that Plaintiff reported to the Unit infirmary on May 10, 2011, complaining about a piece of glass embedded in his forearm, and asking for it to be removed. (Doc. No. 66-3, p. 1.)  He was referred to a mid-level provider, and was seen by a nurse practitioner on May 11, 2011.  (Id.)  He requested, and was given, a ten-day one-arm duty script, and x-rays were ordered.  (Id.)  He returned to the infirmary on May 23, 2011, stating he sprained his wrist, that the x-ray showed glass in his arm, and requested a renewal of his one-arm duty.  (Id.)  He was referred to a doctor.  (Id.)  Warren reviewed Plaintiff's medical record on June 6, 2011, in determining that no medical reason justified a change in Plaintiff's medical classification.  (Id., p. 2.)  He again reviewed Plaintiff's record on June 8, 2011, when Plaintiff was scheduled for doctor's call, but failed to note the May 23, 2011, doctor's referral.  (Id.)  Plaintiff was not referred back to Warren about the glass in his forearm, and Warren finds it "interesting and relevant" that Plaintiff reported to the infirmary on June 21, 2011, complaining about injuries suffered while playing softball.  (Id.) Warren states that since Plaintiff was able to play softball, he did not have a serious medical need with regard to his right forearm.  (Id.)  He notes that Plaintiff was again evaluated at the end of June and treated appropriately by the nurse practitioner.  (Id.)

Dr. Warren states he saw Plaintiff on September 2, 2011, about sores on his chest, but because the sores had healed, he did not entertain Plaintiff's discussion of other complaints, stating

that he could be seen on segregation rounds for those issues.  (Id.)  Plaintiff then transferred to another Unit on September 12, 2011.  (Id., p. 3.)

Defendant also provides copies of Plaintiff's medical records, which verify Plaintiff's medical treatment for numerous complaints on May 10, 2011, May 11, 2011, May 23, 2011, June 6, 2011, June 8, 2011, June 14, 2011, June 21, 2011, June 24, 2011, June 29, 2011, August 29-31, 2011, September 1-8, 2011, September 11-12, 2011.  (Doc. No. 66-2.)

### b.      Plaintiff's Response

Plaintiff's Response focuses on his PTSD and other conditions, stating Defendants failed to properly treat him.  (Doc. No. 74, pp. 7-8.)

### c.      Analysis

As noted earlier, to prove Defendant violated his Constitutional rights, Plaintiff must produce evidence to support a finding of deliberate indifference to a serious medical need.  Farmer v. Brennan, 511 U.S. 825, 838 (1994).  The "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).  See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment).

In this case, Plaintiff complains about Warren's failure to remove the glass embedded from his forearm.  According to the medical records presented, Plaintiff was seen on numerous occasions by medical professionals for his complaints about glass in his forearm.  On May 10, 2011, he complained that he was unable to grip and asked to see the doctor for removal of the glass.  (Doc. No. 66-2, p.2.)  The nurse referred Plaintiff to a physician and noted limited range of motion and

prescribed acetaminophen for pain.  (<u>Id</u>.)  He again complained the next day, and the nurse noted no swelling or discoloration, full range of motion of the elbow and wrist, and altered comfort in the right forearm.  (<u>Id</u>.)  X-rays taken on May 18, 2011, noted a radiopaque foreign body in the soft tissues of the forearm, approximately 4 mm in diameter, with no acute abnormality.  (<u>Id</u>., p. 3.)  He complained again about his forearm on three other occasions – May 23, 2011, June 29, 2011, and August 31, 2011.  (<u>Id</u>., pp. 4, 7, 9.)  During that same time frame, he complained, and was seen by medical professionals, concerning a variety of other ailments, such as boils, rashes, and knee pain. (Doc. No. 66-2.) Plaintiff produces no evidence to show that Warren acted with deliberate indifference to him or refused treatment, or that the glass in the forearm constituted a serious medical need.  In fact, all indications from the record presented are that the glass/shrapnel was embedded sometime in the past when Plaintiff served in the Army, and he was discharged in 2004 (Doc. No. 66-4, p. 2.)  The glass was not removed when Plaintiff was treated at the VA hospital in Poplar Bluff, Missouri, prior to his incarceration.  (Doc. No. 2, p. 15.)  Plaintiff admits in the deposition that Warren told him the condition was "non-evasive," (sic), that it was "in there but it's not causing any harm."  (Doc. No. 66-4, p. 5.)  At most, Defendant's failure to remove this piece of glass/shrapnel this amounts to a disagreement over his medical treatment decisions, which does not support a constitutional violation.  <u>See</u> <u>Smith v. Marcantonio</u>, 910 F.2d at 502.

### 3) Arkansas Civil Rights claims

For the same reasons set forth above, the Court will exercise its discretion to dismiss these claims against the medical Defendants, without prejudice.

## IV. Miscellaneous Claims

The Court notes that in Section III of Plaintiff's Complaint (prior to Counts I-V), Plaintiff

includes allegations that Plaintiff has "been refused medical care in a timely or effective manner," "has been required to either work in the fields," has not been appropriately treated for vision and hearing defects, has not been given adequate accommodations for his safety, and has not been adequately treated for his mental/emotional issues.  (Doc. No. 2, pp. 8-10.)  He does not, however, plead these allegations with specificity or indicate which Defendants are responsible, and therefore, the Court finds that these remaining vague allegations should be DISMISSED without prejudice for failing to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In addition, Plaintiff named in his Complaint "John/Jane Does, Nos. 1-10."  (Doc. No. 2, p.1.)  At no time in these proceedings, however, has Plaintiff identified these Doe Defendants, and they were never served with a copy of his Complaint.  Therefore, the John/Jane Does should be dismissed.

## V.   Conclusion

IT IS, THEREFORE,  RECOMMENDED that:

1.      Defendants' Motions for Summary Judgment be GRANTED (Doc. Nos. 61, 64).

2.      Plaintiff's § 1983 claims against Defendants Holthoff, Thurman, Austin, and Corizon, Inc., be DISMISSED without prejudice, for failure to exhaust his administrative remedies.

3.      Plaintiff's § 1983 mental health claims against Defendant Warren be DISMISSED without prejudice, for failure to exhaust his administrative remedies.

4.      Plaintiff's § 1983 claims against Defendants Green, Moncrief, Tate, Warner, and Warren, be DISMISSED with prejudice.

5.      Plaintiff's state civil rights claims be DISMISSED without prejudice.

6.      Plaintiff's claims against "John/Jane Does" be DISMISSED without prejudice.

IT IS SO RECOMMENDED this 20th day of August, 2013.


_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE